Gregory K. Zeuthen – OSB No. 843961
**GREGORY K. ZEUTHEN, ATTORNEY AT LAW, P.C.**
210 SW Morrison Street, Suite 400
Portland, Oregon 97204
Phone: (503) 227-7257
Fax: (503) 228-1556
*gkz@zlawoffice.com*

Jarrett L. Ellzey — Texas Bar No. 24040864
*(Pro Hac Vice)*
**HUGHES ELLZEY, LLP**
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone: (713) 554-2377
Fax: (888) 995-3335
*jarrett@hughesellzey.com*
*craft@hugheseellzey.com*

John P. Kristensen – Cal. Bar No. 224132
*(Pro Hac Vice)*
**KRISTENSEN WEISBERG, LLP**
12540 Beatrice Street, Ste. 200
Los Angeles, CA 90066
Phone: (310) 507-7924
Fax: (310) 507-7906
*john@kristensenlaw.com*

**ATTORNEYS FOR PLAINTIFF
AND THE PROPOSED CLASS**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| ERIK MATTSON, individually and on behalf of all others similarly situated, <br><br> Plaintiff <br><br> v. <br><br> UNITED MORTGAGE CORPORATION, <br><br> Defendant. | Case No.: <br><br> Related to and Severed From: <br> Case No. 3:17-cv-01840-YY <br><br> **CLASS ACTION** <br><br> **PLAINTIFF'S CLASS ACTION COMPLAINT FOR DAMAGES & INJUNCTIVE RELIEF** <br><br><br> **DEMAND FOR JURY TRIAL** |

## PLAINTIFF'S CLASS ACTION COMPLAINT

ERIK MATTSON ("Plaintiff"), individually and on behalf of all other persons similarly situated, brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against defendant UNITED MORTGAGE CORP. ("Defendant" or "United Mortgage") to stop Defendant's practice of making unsolicited telemarketing calls to the telephones of consumers nationwide and to obtain redress for all persons injured by their conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorney.

## INTRODUCTION

1.     United Mortgage is a mortgage company. In an effort to solicit potential customers, Defendant recruited, or employed call centers who began making telephone calls, *en masse*, to consumers across the country. On information and belief, United Mortgage and or their agents purchase "leads" containing consumers' contact information and create electronic databases from which Defendant makes automated calls.

2.     Defendant conducted (and continues to conduct) wide scale telemarketing campaigns and repeatedly made/makes unsolicited calls to consumers' telephones—whose numbers appear on the National Do Not Call Registry—without consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

3.     The TCPA was enacted to protect consumers from unsolicited telephone calls exactly like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiff files the instant lawsuit and seeks an injunction requiring United Mortgage to cease all unsolicited telephone calling activities to consumers registered on the National Do Not Call

Registry, and cease all telemarketing activity until it actually comply with its obligations under 47 C.F.R. § 64.1200(d) and an award of statutory damages to the members of the Class under the TCPA up to $500.00 per violation, together with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or willful violations).

4.     By making the telephone calls at issue in this Complaint, Defendant caused Plaintiff and the members of the putative Classes of consumers (defined below) actual harm, including the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone calls, as well as the monies paid to their carriers for the receipt of such telephone calls.

5.     Plaintiff brings this class action against United Mortgage to secure redress because Defendant willfully violated the TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C § 227, *et seq.* by causing unsolicited calls to be made to Plaintiff's and other class members' telephones even though they had registered on the Do Not Call registry.

### PARTIES

6.     Plaintiff ERIK MATTSON is a natural person and citizen of Portland, Oregon.

7.     Defendant UNITED MORTGAGE CORP. ("United Mortgage") is a corporation organized under the laws of the State of New York. Defendant maintains its principal place of business in Melville, New York. Defendant may be served with process by serving its Chief Executive Officer, Mark Rosenbloom, 25 Melville Park Rd., Ste. 100, Melville, New York, 11747.

8.     Plaintiff does not yet know the identity of Defendant's employees/agents that had direct, personal participation in or personally authorized the conduct found to have violated the statute, and were not merely tangentially involved. They are referenced tentatively, as numerous

District Courts have found that individual officers/principals of corporate entities may be personally liable (jointly and severally) under the TCPA if they had direct, personal participation in or personally authorized the conduct found to have violated the statute, and were not merely tangentially involved. *Texas v. American Blastfax, Inc.*, 164 F.Supp.2d 892, 899 (W.D. Tex. 2001) ("*American Blastfax*"); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, 2014 WL 1333472, at * 3 (N.D. Ohio March 28, 2014); *Maryland v. Universal Elections*, 787 F.Supp.2d 408, 415-16 (D.Md. 2011) ("*Universal Elections*"); *Baltimore-Washington Tel Co. v. Hot Leads Co.*, 584 F.Supp.2d 736, 745 (D.Md. 2008); *Covington & Burling v. Int'l Mktg. & Research, Inc.*, 2003 WL 21384825, at *6 (D.C.Super Apr. 17, 2003); *Chapman v. Wagener Equities, Inc.* 2014 WL 540250, at *16-17 (N.D.Ill. Feb. 11, 2014); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 775 F.Supp.2d 1316, 1321 (D.Wy.2011) ("*Versteeg*"). Upon learning of the identities of said individuals, Plaintiff will move to amend to name the individuals as defendants.

9.      Whenever in this complaint it is alleged that United Mortgage committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees, subsidiaries, or affiliates committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of United Mortgage or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION & VENUE

10.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

11.      The Court has personal jurisdiction over United Mortgage because it conducts significant business in this District, and the unlawful conduct alleged in this Complaint occurred

in, was directed to, and/or emanated from this District.

12.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

13.    Defendant is subject to specific personal jurisdiction in this District because it has continuous and systematic contacts with this District through its telemarketing efforts that target this District, and the exercise of personal jurisdiction over Defendant in this District does not offend traditional notions of fair play or substantial justice.

A.    UNITED MORTGAGE

14.    United Mortgage is a leading national mortgage company that claims to "employ the most advanced mortgage technology available." United Mortgage operates in 27 states, and the District of Columbia: California, Colorado, Connecticut, Delaware, Florida, Illinois, Indiana, Kansas, Kentucky, Maine, Maryland, Michigan, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, and Washington. United Mortgage Corp. markets its services to Oregon residents. United Mortgage has been registered to provide mortgage services in Oregon since at least 2006.

15.    United Mortgage registered with the State of Oregon's Division of Financial Regulation with the intent to obtain a license to offer mortgage loans to Oregonians. United Mortgage's Mortgage Lending License with the State of Oregon's Division of Financial Regulation is ML-5497. It was issued on October 4, 2016 and renewed on October 26, 2017.

16.    United Mortgage, at all relevant times, has been in the business of soliciting, marketing to and selling mortgages to Oregonians. In doing so, it is directly aimed its business at

Oregonians as part of its marketing and advertising. United Mortgage, using (503) based area code phone numbers, contacted Plaintiff multiple times in Oregon via his (503) phone in an attempt to sell mortgage services for property in Oregon.

## LEGAL BASIS FOR THE CLAIMS

17.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy…" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

18.    Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems—principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

19.    In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls. Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines. The new amendments to the TCPA, effective October 16, 2013, eliminated the established business relationship exemption. Therefore, all pre-recorded telemarketing calls to residential lines and wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

20.    As of October 16, 2013, unless the recipient has given <u>prior express written</u>

<u>consent</u>,[1] the TCPA and Federal Communications Commission (FCC) regulations promulgated

pursuant to the TCPA mandate the follow:

- Prohibits solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Requires solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibits solicitations to residences that use an artificial voice or a recording.

- Prohibits any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or telephone.

- Prohibits any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (e.g., "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a telephone, or any service for which the recipient is charged for the call.

- Prohibits autodialed calls that engage two or more lines of a multi-line business.

- Prohibits unsolicited advertising faxes.

- Prohibits certain calls to members of the Do-Not-Call Registry.

21.    Furthermore, in 2008, the FCC held that "a creditor on whose behalf an

autodialed or prerecorded message call is made to a wireless number bears the responsibility for

any violation of the Commission's rules." *In re Rules and Regulations Implementing the*

*Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for*

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

*Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (Dec. 31, 2012).

22.    Accordingly, an entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

23.    There are just a handful of elements need to be proven for violations of the Do Not Call provision of the TCPA.

**A.    DO NOT CALL VIOLATIONS OF THE TCPA**

24.    <u>More Than One Call within Any 12 Month Period</u>. 47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

25.    <u>Calls to Phones on the Do Not Call List</u>. The TCPA's implementing regulation— 47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." *See* 47 C.F.R. § 64.1200(c).

26.    <u>Including Wireless Lines on the Do Not Call List</u>. Owners of wireless telephone numbers (aka mobile or cellular phones) receive the same protections from the Do Not Call provision as owners or subscribers of wireline ("landline") phone numbers. 47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity

making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

27.    <u>The Affirmative Defense of Prior Express Consent</u>. The Ninth Circuit has defined "express consent" to mean "clearly and unmistakably stated." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) ("*Satterfield*")). "Prior express consent is an affirmative defense for which the defendant bears the burden of proof." See *Grant v. Capital Management Services, L.P.*, 2011 WL 3874877, at *1, n.1. (9th Cir. Sept. 2, 2011) ("express consent is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof"); see also *Robbins v. Coca-Cola Company*, No. 13-cv-132, 2013 WL 2252646, at *2 (S.D. Cal. May 22, 2013).

28.    <u>Telemarketers Must Maintain a List of Persons Requesting Not to Receive Calls</u>. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

---

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request...

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made) and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

## COMMON FACTUAL ALLEGATIONS

29.     United Mortgage is a mortgage company. In an effort to solicit potential customers, Defendant obtains lists of potential customers from various sources. They proceed to contact people without having actual obtained consent to contact consumers on their cellular phones or notwithstanding consumers' registration with the Do Not Call registry. The Defendant

also engages and works with third-party call centers to contact consumers. In one instance (but not the only method), a third party, utilizing a sophisticated automated voice response system, the call center contacts consumers and attempts to illicit a positive response from each when the computer asks whether that individual is interested in receiving information about mortgages. The computer then immediately forwards the caller's information as a positive hit to Defendant, who then place a subsequent call to that consumer for the purpose of making a sales pitch. Defendant and/or the third parties believe they have circumvented the TCPA and have legal consent to place the calls to these individuals. The problem is, on information and belief, the call center forwards contact information for any live body who answers the call and communicates with the automated system, regardless of whether that person gave valid consent to receive subsequent marketing calls from Defendants. Furthermore, there is no question the initial calls from the call centers are placed in violation of the TCPA. Therefore, the call centers (agents) are also liable for violating the TCPA, as are the principals (Defendants).

30.     In United Mortgage's overzealous attempt to market its services, they placed (and continue to place) phone calls to consumers who never provided consent to call and to consumers having no relationship with Defendant. Worse yet, United Mortgage placed (and continue to place) repeated and unwanted calls to consumers whose phone numbers are listed on the National Do Not Call Registry. Consumers place their phone numbers on the Do Not Call Registry for the express purpose of avoiding unwanted telemarketing calls like those alleged here.

31.     United Mortgage knowingly made (and continue to make) these telemarketing calls without the prior express written consent of the call recipients, and knowingly continue to call them after requests to stop. As such, United Mortgage not only invaded the personal privacy

of Plaintiff and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

32.    United Mortgage, even after being told not to continue to call (which would revoke any purported consent), proceeded to contact Plaintiff and members of the putative Class, even after the 30 day safe harbor period.

## FACTS SPECIFIC TO PLAINTIFF ERIK MATTSON

33.    Over two years ago, on or about April 4, 2015, Plaintiff registered his cellular phone number with the original Oregon prefix (503) and ending in 1930 with the National Do Not Call Registry.

34.    Beginning in 2016, Plaintiff began receiving automated calls on his cellular telephone from various numbers offering refinanced mortgage products. Plaintiff blocked several numbers and filed complaints with the Federal Trade Commission, but continued to receive calls from new numbers.

35.    Plaintiff is the regular carrier and exclusive user of the telephone assigned the number ending in 1930. The number is assigned to a cellular telephone service for which Plaintiff is charged for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

36.    On September 1, 2017, Plaintiff received an automated call about refinancing a mortgage from the phone number (971) 206-9522. Plaintiff called the number back and was greeted by what seemed to be a live representative, but in reality, was a deceptive automated system.

37.    Plaintiff asked the automated system questions to which he received answers that did not logically follow his questions.

38.    Plaintiff called back 17 times trying to reach a live representative, but rather than connect Plaintiff to someone he could speak to, the automated system would abruptly redirect the conversation to a sales pitch or series of questions.

39.    Plaintiff, still uncertain if he had been connected to a live representative or was speaking with an automated system, began answering questions with nonsensical answers to try to determine whether he was interacting with an actual person or a recorded system. When asked what his name was, Plaintiff answered, "Twelve." The system continued with its questions and did not appear to recognize that he was answering nonsensically.

40.    The system then asked if it could have mortgage brokers call Plaintiff, to which Plaintiff replied, "No." The system then repeated the question, to which Plaintiff said, "Two." After this response, the call abruptly ended.

41.    Plaintiff believes this may be one of the methods the Defendant obtained his cellular telephone number. Plaintiff believes that Defendant engages in other areas of the grey market and similar nefarious methods to obtain contact information to solicit their mortgage services. Nevertheless, shortly thereafter, Defendant started contacting Plaintiff to hawk their mortgage services in the state of Oregon.

## DEFENDANT'S CALLS TO PLAINTIFF

**A.    UNITED MORTGAGE**

42.    Plaintiff never had a business relationship with United Mortgage.

43.    Plaintiff did not provide United Mortgage with prior express consent to receive calls or text messages to his phone pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

44.     On or about October 13, 2017 at approximately 10:21 a.m., Plaintiff received a phone call from United Mortgage soliciting its mortgage services. The New York company was using an Oregon phone number prefix, the original (503) 303-6693. The caller identified herself as Tamara Johnson. Plaintiff informed United Mortgage to stop calling him.

45.     United Mortgage called Plaintiff again from on November 6, 2017 at approximately 8:15 a.m., on November 14, 2017 at approximately 2:24 p.m., and on November 17, 2017 at approximately 9:22 a.m.  The caller identified herself as Kendra.

46.     United Mortgage called again on December 6, 2017 at approximately 2:53 p.m. In all of the calls from United Mortgage, the individuals were soliciting its mortgage services. The caller identified herself as Melissa.

47.     Plaintiff was annoyed by the calls and wanted, and continued to inform, United Mortgage to stop calling, yet United Mortgage continued to call.

48.     United Mortgage's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

49.     Plaintiff believes there may be additional calls from United Mortgage.

50.     Plaintiff has reason to believe United Mortgage called, and continues to call, thousands of telephone customers listed on the DNC to market their products and services.

51.     Plaintiff's overriding interest is ensuring United Mortgage cease all illegal telemarketing practices and compensates all members of the Plaintiff Class for invading their privacy in the manner the TCPA was contemplated to prevent.

52.     In order to redress injuries caused by United Mortgage's violations of the TCPA, Plaintiff, on behalf of himself and a class of similarly situated individuals, brings suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited calls.

53.     On behalf of the Plaintiff Class(es), Plaintiff seeks an injunction requiring United Mortgage to cease all wireless telemarketing and spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

54.     Plaintiff also seeks an injunction requiring United Mortgage not to make any telemarketing calls until Defendants and its agents comply with 47 C.F.R. § 1200(d) by instituting procedures where any person who requests not to receive telemarketing calls made by on or behalf of United Mortgage will not receive any further calls after the expiration of the 30 day safe harbor provision.

## STANDING

55.     Plaintiff has standing to bring this suit on behalf of himself and the members of the class under Article III of the United States Constitution because Plaintiff's claims state: (a) a valid injury in fact; (b) an injury which is traceable to the conduct of Defendants; and (c) is likely to be redressed by a favorable judicial decision. *See Spokeo v. Robins*, 578 U.S. __ (2016) at 6; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

**A.     INJURY IN FACT**

56.     Plaintiff has standing to bring this suit on behalf of himself and the members of the class under Article III of the United States Constitution because Plaintiffs' claims state: (a) a valid injury in fact; (b) an injury which is traceable to the conduct of Defendants; and (c) is likely to be redressed by a favorable judicial decision. *See Spokeo v. Robins*, 578 U.S. __ (2016) at 6; *Robins v. Spokeo,* 867 F.3d 1108 (9th Cir. 2017) (cert denied. 2018 WL 491554, U.S., Jan. 22 2018); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); and *Chen v. Allstate Inc. Co.*, 819 F.3d 1136 (9th Cir. 2016).

57.     Plaintiff's injury must be both "concrete" and "particularized" in order to satisfy

the requirements of Article III of the Constitution. *(Id.)*

58.     For an injury to be concrete it must be a de facto injury, meaning it actually exists. In the present case, Plaintiff took the affirmative step of enrolling himself on the National Do-Not-Call Registry for the purpose of preventing marketing calls to his telephone. Such telemarketing calls are a nuisance, an invasion of privacy, and an expense to Plaintiff. *See Soppet v. enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). All three of these injuries are present in this case. (See also *Chen v. Allstate Inc. Co.*, 819 F.3d 1136 (9th Cir. 2016).)

59.     Furthermore, the Ninth Circuit recently stated, Congress found that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients," and sought to protect the same interests implicated in the traditional common law cause of action. *Van Patten v. Vertical Fitness Group*, 847 F.3d 1037, 1043 (9th Cir. 2017). Put differently, Congress was not inventing a new theory of injury when it enacted the TCPA. Rather, it elevated a harm that, while "previously inadequate in law," was of the same character of previously existing "legally cognizable injuries." *Spokeo*, 136 S.Ct. at 1549. *Spokeo* addressed, and approved, such a choice by Congress. *Susinno v. Work Out World Inc.*, No. 16-3277, 2017 WL 2925432, at *4 (3d Cir. July 10, 2017).

60.     For an injury to be particularized means that the injury must affect the plaintiff in a personal and individual way. *See Spokeo* at 7. Furthermore, Plaintiff is the person who pays for the phone, and is the regular carrier and user of the phone. All of these injuries are particular to Plaintiff.

## B.     TRACEABLE TO THE CONDUCT OF UNITED MORTGAGE

61.     Plaintiff must allege at the pleading stage of the case facts to show that his injury is traceable to the conduct of Defendant. In this case, Plaintiff satisfies this requirement by

alleging that United Mortgage, and/or an agent of Defendant on behalf of Defendant, placed illegal calls to Plaintiff's phone.

62.     United Mortgage placed calls and text messages to Plaintiff's wireless/cellular phone on at least October 13, 2017, November 6, 2017, November 14, 2017, November 17, 2017 and December 6, 2017. United Mortgage also placed calls 30 days after being told to stop on October 13, 2017. The calls, were all made within a 12 month period to a number on the Do Not Call Registry.

## C.     INJURY LIKELY TO BE REDRESSED BY A FAVORABLE JUDICIAL OPINION

63.     The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.  In the present case, Plaintiff's Prayers for Relief include a request for damages for each call made by Defendant, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff and the members of the putative class. Furthermore, Plaintiff's Prayers for Relief request injunctive relief to restrain Defendant from the alleged abusive practices in the future. The award of monetary damages and the order for injunctive relief redress the injuries of the past, and prevent further injury in the future.

64.     Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins,* 578 U.S. ___ (2016) and in the context of a TCPA claim, as explained by the Ninth Circuit in *Chen v. Allstate Inc. Co.*, 819 F.3d 1136 (9th Cir. 2016), Plaintiff has standing to sue Defendants on the stated claims.

## CLASS ACTION ALLEGATIONS

## A.     CLASS ALLEGATIONS

65.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a),

(b)(2), and (b)(3) on behalf of himself and the following class defined as follows (the "Classes"):

**"United Mortgage DNC Class":** [2]  All individuals in the United States who: (1) received more than one telephone call made by or on behalf of United Mortgage within a 12-month period; (2) to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days; and (3) for whom Defendant has no record of consent to place such calls.

**"United Mortgage DNC SubClass":**  All individuals in the United States who: (1) received more than one telephone call made by or on behalf of United Mortgage within a 12-month period; (2) to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days; and (3) for whom Defendant, or those acting on Defendant's behalf, re-contacted 30 days after first requesting Defendant, or those acting on Defendant's behalf, halt placing such calls.

66.    The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and its current or former employees, officers, and directors; (3) Plaintiff's counsel and Defendant's counsel; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released.

67.    This suit seeks only damages, statutory penalties, and injunctive relief for recovery of economic injury on behalf of the Classes, and it expressly is not intended to request any recovery for personal injury and claims related thereto.

68.    Plaintiff reserves the right to expand the Class definitions to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and

---

[2] "DNC" referenced herein refers to the National Do Not Call Registry, established pursuant to 47 U.S.C. 227(c) and the regulations promulgated by the Federal Communications Commission ("FCC").

discovery.

69.     Plaintiff and members of the Classes were harmed by Defendant's acts in at least the following ways: Defendant, either directly or through agents, illegally contacted Plaintiff and the Class members *via* their telephones, after Plaintiff and the Class members took the affirmative step of registering their numbers on the DNC.

**B.     NUMEROSITY**

70.     The exact size of the Classes is unknown and not available to Plaintiff at this time, but it is clear individual joinder is impracticable.

71.     On information and belief, Defendant made telephone calls to thousands of consumers who fall into the definition of the Classes. Members of the Classes can be easily identified through Defendant's records.

**C.     COMMONALITY AND PREDOMINANCE**

72.     There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes.

73.     Common questions for the Classes include, but are not necessarily limited to the following:

(a)     Whether Defendant's conduct violated the TCPA;

(b)     Whether Defendant systematically made telephone calls to consumers who did not previously provide Defendant and/or their agents with prior express written consent to receive such phone calls after October 16, 2013;

(c)     Whether Defendant systematically made telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry;

(d)     Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct;

      (e)     Whether Defendant and its agents should be enjoined from engaging in such conduct in the future;

      (f)     Whether Defendant and its agents failed to comply with 47 CFR § 1200(d).

**D.    TYPICALITY**

74.    Plaintiff's claims are typical of the claims of the other members of the Classes.

75.    Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Classes.

**E.    ADEQUATE REPRESENTATION**

76.    Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions.

77.    Plaintiff has no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.

**F.    POLICIES GENERALLY APPLICABLE TO THE CLASSES**

78.    This class action is appropriate for certification because United Mortgage has acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Classes members, and making final injunctive relief appropriate with respect to the Classes as a whole.

79.    Defendant's practices challenged herein apply to and affect the Classes' members uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

**G.    SUPERIORITY**

80.    This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy

given that joinder of all parties is impracticable.

81.     The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions.

82.     Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct.

83.     Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

84.     By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

### FIRST CAUSE OF ACTION
#### VIOLATION OF TCPA, 47 U.S.C. § 227(C)
#### ("DNC Claim" On behalf of Plaintiff and the United Mortgage DNC Class)

85.     Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

86.     United Mortgage violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless and residential telephone subscribers such as Plaintiff and the United Mortgage DNC Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive

telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from United Mortgage, as set forth in 47 C.F.R. § 64.1200(d)(3).

87.    United Mortgage made more than one unsolicited telephone call to Plaintiff and members of the Class within a 12-month period without their prior express consent to place such calls. Plaintiff and members of the United Mortgage DNC Class never provided any form of consent to receive telephone calls from Defendants do not have a record of consent to place telemarketing calls to them.

88.    United Mortgage violated 47 U.S.C. § 227(c)(5) because Plaintiff and the United Mortgage DNC Class members received more than one telephone call in a 12-month period made by or on behalf of United Mortgage in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the United Mortgage DNC Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

89.    To the extent United Mortgage's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class.

### SECOND CAUSE OF ACTION
### VIOLATION OF TCPA, 47 U.S.C. § 227(C) – 47 C.F.R. § 64.1200(D)
### ("DNC Claim" On behalf of Plaintiff and the United Mortgage DNC SubClass)

90.    Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

91.    United Mortgage violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the United Mortgage DNC SubClass, without instituting procedures that comply with the regulatory

minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

92.     These consumers, already on the Do Not Call Registry, like Plaintiff, requested to not receive calls from United Mortgage, as set forth in 47 C.F.R. § 64.1200(d)(3).

93.     Nevertheless, United Mortgage and its agents refused to record the requests, including Plaintiff's, to stop their telemarketing calls. Any prior express consent was revoked (if it ever existed).

94.     United Mortgage violated 47 U.S.C. § 227(c)(5) because Plaintiff and the United Mortgage DNC Class members received more than one telephone call in a 12-month period made by or on behalf of United Mortgage in violation of 47 C.F.R. § 64.1200(d), after they had requested to not be called again, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the United Mortgage DNC SubClass suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

95.     To the extent United Mortgage's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class.

## ATTORNEY'S FEES

96.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

97.     Plaintiff is entitled to recover reasonable attorney fees under Rule 23 of the Federal Rules of Civil Procedure and other assorted statutes, and requests the attorneys' fees be awarded.

## JURY DEMAND

98.     Plaintiff, individually and on behalf of the Class, demands a jury trial on all issues

triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for the following relief:

(a)     An order certifying the United Mortgage DNC Class as defined above, appointing Plaintiff as the representative of the Class, and appointing his counsel, HUGHES ELLZEY, LLP & KRISTENSEN WEISBERG, LLP as lead Class Counsel;

(b)     An order certifying the United Mortgage DNC SubClass as defined above, appointing Plaintiff as the representative of the Class, and appointing his counsel, HUGHES ELLZEY, LLP & KRISTENSEN WEISBERG, LLP as lead Class Counsel;

(c)     An award of actual and statutory damages for each and every negligent violation to each member of the Classes pursuant to 47 U.S.C. § 227(b)(3)(B);

(d)     An award of actual and statutory damages for each and every knowing and/or willful violation to each member of the Classes pursuant to 47 U.S.C § 227(b)(3)(B);

(e)     An injunction requiring Defendant and Defendant's agents to cease all unsolicited telephone calling activities, and otherwise protecting the interests of the Class, pursuant to 47 U.S.C. § 227(b)(3)(A);

(f)     An injunction precluding Defendant and Defendant's agents from any telemarketing, until they comply with the mandate of 47 C.F.R. § 64.1200(d).

(g)    Pre-judgment and post-judgment interest on monetary relief;

(h)    An award of reasonable attorneys' fees and court costs; and

(i)    All other and further relief as the Court deems necessary, just, and proper.

Dated:  June 5, 2018

Respectfully Submitted,

/s/ Gregory K. Zeuthen
Gregory K. Zeuthen - gkz@zlawoffice.com
Oregon Bar No. 843961
GREGORY K. ZEUTHEN, ATTORNEY AT LAW, P.C.
210 SW Morrison Street, Suite 400
Portland, Oregon 97204
Phone: (503) 227-7257
Fax: (503) 228-1556

/s/ Jarrett Ellzey
Jarrett L. Ellzey—jarrett@hughesellzey.com
Texas Bar No. 24040864 (Pro Hac Vice)
HUGHES ELLZEY, LLP
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone: (713) 554-2377
Fax: (888) 995-3335

/s/ John P. Kristensen
John P. Kristensen—john@kristensenlaw.com
Cal. Bar No. 224132 (Pro Hac Vice)
KRISTENSEN WEISBERG, LLP
12540 Beatrice Street, Ste. 200
Los Angeles, CA 90066
Phone: (310) 507-7924
Fax: (310) 507-7906

**ATTORNEYS FOR PLAINTIFF
AND THE PROPOSED CLASSES**

## CERTIFICATE OF SERVICE

I certify that on this Eighth day of June, 2018, the foregoing document entitled
PLAINTIFF'S CLASS ACTION COMPLAINT FOR DAMAGES & INJUNCTIVE RELIEF
will be served in accordance with the Court's CM/ECF system, which will send notification of
such filing and a true copy of the foregoing document by notice via email to the ECF participants
of record.

By: /s John P. Kristensen
**John P. Kristensen**–John@kristensenlaw.com
Cal. Bar No. 224132 (Pro Hac Vice)
**KRISTENSEN WEISBERG, LLP**
12540 Beatrice Street, Suite 200
Los Angeles, CA 90066
Phone: (310) 507-7924
Fax: (310) 507-7906

## CERTIFICATE OF SERVICE

I certify that on this Eighth day of June, 2018, the foregoing document entitled STIPULATION TO FILE CORRECT COMPLAINT & [Proposed] ORDER will be served in accordance with the Court's CM/ECF system, which will send notification of such filing and a true copy of the foregoing document by notice via email to the ECF participants of record.

By: /Justin Farzadkish/

**Justin Farzadkish**–justin@kristensenlaw.com
**KRISTENSEN WEISBERG, LLP**
12540 Beatrice Street, Suite 200
Los Angeles, CA 90066
Phone: (310) 507-7924
Fax: (310) 507-7906